# 21-MJ-4062-O'SULLIVAN



FILED BY KS D.C.
Oct 20, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>                        PLAINTIFF,<br><br>v.<br><br>ANDRES FELIPE CADENAS YEPES,<br>                       DEFENDANT(S) | **WARRANT FOR ARREST**<br><br>ON COMPLAINT<br><br>CASE NO.: 8:21-mj-00642 -duty |

To:  UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **ANDRES FELIPE CADENAS YEPES,** and bring him forthwith to the nearest Magistrate Judge to answer a complaint charging him with Wire Fraud, in violation of Title 18, United States Code, Section 1343.

REC: BY AUSA J. CHEMERINSKY          [Detention]

_9/24/21_
Date

_____
Hon. Margo A. Rocconi
United States Magistrate Judge

_____
Signature of Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED<br><br>DATE OF ARREST | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>ANDRES FELIPE CADENAS YEPES,<br><br>Defendant | Case No.  8:21-mj-00642 -duty |

LODGED
CLERK, U.S. DISTRICT COURT
9/24/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: JB  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
9/24/21
CENTRAL DISTRICT OF CALIFORNIA
BY: EB  DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 31, 2018 and August 1, 2018 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Cara A. Sammartino, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 9/24/21

Judge's signature

City and state: Los Angeles, California

Margo A. Rocconi, U.S. Magistrate Judge
*Printed name and title*

AUSA:   J. Chemerinsky x. 6520

**AFFIDAVIT**

I, Cara A. Sammartino, being duly sworn and under oath, hereby depose and say:

## I. INTRODUCTION

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") assigned to the West Covina Resident Agency as a SA since 2016. I received my initial training and instruction to become a Special Agent during 21 weeks at the FBI Academy located in Quantico, Virginia. There I received training concerning violations of the United States criminal statutes. After initial training, I was assigned to the Los Angeles Division of the FBI and worked from the West Covina, California office on the International Violent Crime and Major Offenders squad. I have handled a variety of criminal cases, which included fugitives, hostage takings, kidnapping, money laundering, wire fraud, financial crimes and bank robberies. I have worked with and consulted numerous law enforcement officers experienced in organized crime, extortion, money laundering and wire fraud.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against, and arrest warrant for, ANDRES FELIPE CADENAS YEPES ("YEPES"), for a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

**A. Theft from Victim T.L.**

1. Statements of T.L.

4. On approximately July 31, 2018, victim T.L., while at her residence in Garden Grove, California, received a phone call on her cellular telephone, ending in -8171, from a number that appeared as (415)345-7300. T.L. researched the phone number on the internet and it appeared the call was originating from the San Francisco Police Department, Tenderloin Station. Believing law enforcement was trying to get ahold of her, T.L. answered the call. A male ("UM1"), with what T.L. described as an Indian accent, began questioning T.L. as to whether or not she ever rented a car in Texas. UM1 provided a name which T.L. could not recall except that T.L. stated it was an Anglo sounding name, not an Indian sounding name, and UM1 identified himself as a law enforcement officer.

5. The UM1 told T.L. a vehicle had been found abandoned in Texas with cocaine inside. According to UM1, the vehicle had been rented in T.L.'s name. After a few more questions, UM1 told T.L. he believed her identity had been stolen and she would have to transfer all of her money to an official IRS bank account for safekeeping before the IRS froze her accounts. At that point, UM1 transferred T.L. to a second male ("UM2"). According to T.L., UM2 sounded younger and had no detectable accent. UM2 confirmed the information UM1 provided to T.L.

6. UM1 came back on the line and had T.L. download the phone application WhatsApp. T.L. had not previously used WhatsApp. T.L. began receiving messages and photos from UM1 with bank wire instructions. Believing she would have a warrant issued for her arrest or have her bank accounts frozen, T.L. followed UM1's instructions and wired $10,000.00 to a bank account in YEPES's name at Region Bank, account xxxxxx4420. T.L. did not know the individual she wired the money to.

7. UM1 instructed T.L. that she needed to "use up all of her credit" on her credit cards in order to "save her credit." At UM1's direction, using a credit card, T.L. attempted to purchase $10,000.00 in Apple gift cards. T.L.'s credit card was declined and the purchase did not go through. T.L. disclosed to UM1 she had a Discover credit card jointly held with her father. UM1 instructed T.L. to go to a Von's grocery store and purchase

$2,000.00 in Apple gift cards and $500.00 in Google Play gift cards.

8. After T.L. made the gift card purchases at Von's, T.L.'s father began receiving alerts from Discover and called her. T.L. was confronted by her father over the Discover charges. T.L. explained the phone call and WhatsApp messages from UM1 to her father. T.L.'s father convinced T.L. the ordeal was a scam. T.L. attempted to report the crime to the local police, however the police instructed T.L. to file a report via IC3.gov. T.L. filed a report via IC3.gov on August 1, 2018. T.L. deleted WhatsApp off her cell phone the same day and did not retain records of the WhatsApp messages, photos, or the phone number. T.L. did check her T-Mobile phone records and the number UM1 called her from appeared on her bill as the spoofed number (415)345-7300.

9. Regions Bank records show YEPES opened account xxxxxx4420 on July 27, 2018 in Miami, Florida, with a deposit of $50.00, using his Colombian passport, and rapidly depleted the account on August 1, 2018, the day after the wire from victim T.L. was credited to the account.

    2.    Regions Bank Account Information

10. Based on my review of Regions Bank records, I learned the following:

      a.    Regions Bank records show YEPES opened account xxxxxx4420 on July 27, 2018 in Miami, Florida, with a deposit of $50.00, using his Colombian passport, and rapidly depleted the account on August 1, 2018, the day after the wire from victim T.L. was credited to the account:

        i.  07-31-2018 $10,000.00 wire credited from victim T.L.

       ii.  08-01-2018 $9,800.00 withdrawal at teller window in Miami, Florida.

     iii.  08-01-2018 $230.00 bank debit in Miami, Florida.

**B.    Fraud of G.F.**

    1.    <u>G.F.'s Description of Fraud</u>

11.  On or about July 25, 2018, G.F., a resident of Conshohocken, Pennsylvania was contacted by phone by an unknown female ("UF") claiming to be "Jennifer Walker," a Federal Marshall for the Social Security Administration.  The UF told G.F. that a vehicle registered in her name had been located in San Antonio, Texas with illegal narcotics and blood inside.  The UF further told G.F. in order to clear her name of any wrongdoing she would need to post bond in three payments; $5,000.00 Google Gift Card, $2,000.00 Google Gift Card and $10,000.00 wired to YEPES at Suntrust Bank account xxxxxxxxx8437.  Believing the UF, G.F. followed all of her instructions.  Afterwards, G.F. realized the ordeal was a scam

and reported the crime to the Conshohocken Police Department in Conshohocken, Pennsylvania.

       2.    <u>YEPES is Charged in Pennsylvania with Fraud Related Offenses</u>

12. Conshohocken Police Detective Christopher McGuire was assigned to investigate victim G.F.'s report. Through conversations with Detective McGuire, I learned the following:

    a. Detective McGuire identified the account owner of the SunTrust Bank account G.F. wired the $10,000.00 to was YEPES. Detective McGuire obtained a known photograph from Customs and Border Protection of YEPES and video surveillance footage obtained from SunTrust Bank. On July 27, 2018, YEPES was captured by SunTrust video surveillance withdrawing the funds he received from victim G.F. Detective McGuire immediately recognized the photograph from U.S. Customs and Border Protection and the video surveillance from SunTrust bank of the person withdrawing the funds received from victim G.F. are one and the same, i.e., YEPES. Detective McGuire noted another identifier confirming the identity of YEPES was his Colombian passport number, which SunTrust bank had on file for him as well.

13. As a result of Detective McGuire's investigation, on November 14, 2018, an arrest warrant was issued by Magisterial District Judge Francis J. Bernhardt III, from the Commonwealth

of Pennsylvania, charging YEPES with the following violations of Pennsylvania Penal Code:

    a. 4106, Access Device Used to Obtain Property

    b. 903, Conspiracy - Access Device Used to Obtain Property

    c. 3921, Theft by Unlawfully Taking/Movable Property

    d. 903, Conspiracy - Theft by Unlawfully Taking/Movable Property

    e. 3925, Receiving Stolen Property

    f. 903, Conspiracy – Receiving Stolen Property

    g. 3022, Theft by Deception/False Impression

    h. 903, Conspiracy – Theft by Deception/False Impression

**C.  CHS Implicates YEPES In Fraudulent Scheme**

14. On March 12, 2019, a Confidential Human Source,[1] ("CHS") was interviewed by the FBI and provided the following information:

    a. In 2018, CHS travelled from Colombia to Los Angeles, California. CHS needed to make money. CHS's friend from Colombia gave CHS a Colombian phone number of a contact known as "Felipe," +57 301-509-3029, and said CHS could find work with him.

---

[1] CHS has a pending case for shoplifting out of the Chicago, Illinois area. CHS was interviewed by the FBI regarding CHS' money laundering activity within the Central District of California. During the Mirandized interview, CHS agreed to cooperate and tell the truth.

        i.    Notably, law enforcement database checks show Colombian phone number +57 301-509-3029 is used by YEPES, in particular, this phone number was listed on YEPES United States visa application as his contact phone number. CHS never met with YEPES in person, but dealt with him only by telephone. CHS knew him as "Felipe," which is YEPES's middle name.

        b.    CHS contacted "Felipe" through WhatsApp, at +57 301-509-3029, looking for work in the United States. "Felipe" was from Colombia and resided in Miami, Florida. "Felipe" and CHS communicated in Spanish. "Felipe" told CHS he could help and said to contact another male by the name of Cristian Casas Cruz. According to CHS, "Felipe" told CHS that "Felipe" was the boss and Cruz worked for him. Cruz was going to be in Los Angeles the same time as CHS. CHS made contact with Cruz and Cruz explained the scope of work. CHS was to open several U.S. bank accounts using CHS's Colombian passport, an email address and phone number provided by Cruz. Cruz would let CHS know when it was time to make withdrawals from the accounts. CHS did not know the origin of the money. CHS figured Cruz and "Felipe" were trying to evade taxes. CHS opened a total of four U.S. bank accounts and received $84,220.00 in wired deposits from four victims across the United States. CHS was chaperoned by Cruz to clean out each bank account. Cruz kept the proceeds and gave a small cut to CHS as payment. Eventually, CHS refused to participate in future

money laundering activities with Cruz. "Felipe" called CHS over CHS's refusal to participate in further activities, very angry.

### D. Interview with Israel Guardado Horta

15. On May 5, 2021, Israel Guardado Horta was interviewed by the FBI and provided the following information:

   a. Horta was recruited to travel to the United States from Mexico for the purpose of opening bank accounts and laundering money. Deposits would be made to his accounts and he would withdraw the money and then buy money orders, send cash via Western Union transfers to Mexico and would exchange cash for cryptocurrency. His friend, Roberto Lazo Garcia, recruited him to participate in this money laundering scheme. According to HORTA, deposits were mostly made by Asian people. While in the United States, Horta stayed at a Best Western Hotel with others that were involved in the same activity.

   b. Horta identified a known Colombian passport photograph of YEPES as a "Leader" and a "Boss" in the money laundering organization. Horta knew YEPES took orders from a higher boss, "J."

16. On March 21, 2021, the Best Western Hotel Manager at 1302 W. Chapman Avenue, Orange, California, Michael Nuno, was interviewed by the FBI and provided the following information:

   a. Nuno recalled customer Horta as a repeat customer. Horta had recently stayed at the Best Western,

February 25, 2021 to February 27, 2021. Horta paid in cash and spoke English. Nuno remembered another male guest not listed on the reservation was staying with Horta, YEPES. Nuno identified a known photograph of YEPES as the same YEPES that stayed with Horta. Nuno had to tell them to stop using the Best Western address as their personal mailing address. The hotel was receiving various bank correspondence for the men and that was not allowed by the establishment.

    E.    **Victim J.A.**

    17. On July 23, 2018, J.A., a resident of Silver Spring, Maryland, was contacted by phone by an unknown male ("UM1") claiming to be from the Internal Revenue Service and that J.A. owed an outstanding IRS debt. The UM advised he was going to help J.A. settle the IRS debt. J.A. also spoke to another male ("UM2"), claiming to be "Attorney General Shawn Wilkinson." The males directed J.A. to purchase gift cards totaling $3,500.00 in order to pay a portion of the IRS debt. Afterwards, J.A. was instructed to wire $50,000.00 to a Bank of America account, xxxxxxxx3750, in the name of YEPES, with an address of 11973 SW 135 Terrace, Miami, Florida 33186. Afterwards, J.A. realized it was a scam and reported the crime to the Montgomery County Police in Silver Spring, Maryland.

    18. Bank of America records show YEPES opened account xxxxxxxx3750, with a $25.00 deposit, using Colombian Passport

AT845252, on July 23, 2018, rapidly depleting the account on July 24, 2018, the day after the wire from victim J.A. was credited to the account.

19. I reviewed bank surveillance photographs from Bank of America. The photographs show YEPES withdrawing extortion victim money from Account xxxxxxx3750 on July 24, 2018 in his true name and identification. When comparing this video surveillance to YEPES Colombian passport photograph, I immediately recognized that the male in the bank making the withdrawal was in fact YEPES.

**F.   Surveillance of YEPES and Training and Experience in Extortion and Fraudulent Schemes**

20. On September 1, 2021, FBI Miami initiated surveillance on YEPES in Hollywood, Florida. YEPES was observed sitting in his vehicle for several hours outside a PNC Bank. YEPES did not exit the vehicle. YEPES then drove to what appeared to be an abandoned townhome, 1655 NW 96th Terrace, Pembroke Pines, Florida 33024 and took photos with his phone. YEPES was observed having an animated phone call while seated in the car in front of the townhome.

21. From my training and experience, I know that money mules in this type of extortion scheme sometimes use vacant homes to receive bulk cash from extortion victims via FEDEX, USPS and UPS. Subjects with knowledge that victim extortion

money is going to be delivered will wait outside of the vacant home until the delivery is made. Once the delivery is made, the money mule takes the package from the abandoned residence and proceeds to launder the stolen money.

### IV. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that YEPES has committed a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

CARA A. SAMMARTINO,
Special Agent, FBI

Subscribed to and sworn before me
this __24th__ day of September, 2021.

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE